**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN DOE | |
| *Pro Se Plaintiff* | Electronically Filed |
| v. | CIVIL CASE NO: 4:19-cv-01438 |
| THE PENNSYLVANIA STATE UNIVERSITY; KAREN FELDBAUM, in her individual and official capacity; FRANCESCO COSTANZO, in his individual and official capacity; UNKNOWN STAFF OF COUNSELING AND PSYCHOLOGICAL SERVICES AT PENN STATE, in his or her individual and official capacity | Honorable Mehalchick<br>JURY TRIAL DEMANDED<br>ORAL ARGUMENT REQUESTED |
| *Defendants* | |

**Opposition to Defendants' Motion to Dismiss**

August 30, 2021 John Doe

Contents

Questions presented ........................................................................................3

Table of Authorities..........................................................................................5

Allegations .......................................................................................................6

Preliminary statement ......................................................................................8

Argument.........................................................................................................10

Conclusion .......................................................................................................17

Questions presented

Question 1: Plaintiff published a website under judmathews.com. Professor Mathews feared that Plaintiff might use the website to expose Mathews' plagiarism and his abusive behavior, thus reported to the University. The University responded by forcing Plaintiff to delete the website and verified Plaintiff's compliance repeatedly, in addition to forcing Plaintiff to go through the student conduct process four times and sanctioning Plaintiff. Should Plaintiff be allowed to proceed with discovery regarding his First Amendment Retaliation Claim?

Answer: Yes.

Question 2: Plaintiff was accused of sending an "anonymous text message" to Mathews. Evidence showed the numbers belonged to Mathews' colleague and his businesses in Mathews' hometown, all had no connection with Plaintiff. Despite this evidence, Plaintiff was accused of having impersonated as Mathews' acquaintances. Additionally, matter outside of charging documents was used to form the sanction, and the outcome of sanction was predetermined before administrative hearing. Should Plaintiff be allowed to proceed with discovery regarding his Due Process Claim?

Answer: Yes.

Question 3: Feldbaum, the case manager and ultimate authority of Plaintiff's

student conduct process, is substantially involved in a task force that has a discriminatory presumption against international students. Plaintiff is an international student. Should Plaintiff be allowed to proceed with discovery regarding his *Monell* claim?

Answer: Yes.

# Table of Authorities

*Warth v. Seldin*,
422 U.S. 490 (1975) .......... 8

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) .......... 8

*B.L. v. Mahanoy Area Sch. Dist.*,
964 F.3d 170 (3d Cir. 2020) (*affirmed* in *Mahanoy Area Sch. Dist. v. B. L.*, No. 20-255 (June 23, 2021) .......... 10

*J.S. ex Rel. Snyder v. Blue Mountain School*,
650 F.3d 915 (3d Cir. 2011) .......... 10

*Tinker v. Des Moines Independent Community School Dist.*,
393 U.S. 503 (1969) .......... 11-12

*Dejohn v. Temple Univ*,
537 F.3d 301 (3d Cir. 2008) .......... 11

*Mathews v. Eldridge*,
424 U.S. 319 (1976) .......... 13

*Doe v. Pa. State Univ.*,
336 F. Supp. 3d 441 (M.D. Pa. 2018) .......... 13

*Goss v. Lopez*,
419 U.S. 565 (1975) .......... 13, 15

*Sean Park v. Temple Univ.*,
No. 18-1891, (3d Cir. Dec. 11, 2018) (vacating *Park v. Temple Univ.*, CIVIL ACTION No. 16-5025 (E.D. Pa. Mar. 20, 2018)).......... 16

Allegations

Plaintiff arrived in the United States in 2017 to start law school. Mathews was Plaintiff's professor. On April 22, 2018, Plaintiff proposed to create a website "judmathews.com" at a party outside of the law school. Mathews agreed. Afterward, Mathews insisted to pay Plaintiff. Plaintiff stated he was uncomfortable receiving money from Mathews. Unable to find a compromise, Plaintiff decided to use the website to publish his project. Mathews agreed.

However, realizing Plaintiff might use the website to disclose Mathews' abusive behavior and his academic plagiarism (in Mathews' word Mathews' "dirt"), Mathews filed a "Behavioral Threat Management Team Referral Form." Doc. 91. Exh. C. In the form, Mathews stated his perceived threat would be Plaintiff might fill the published judmathews.com with information beyond Mathews' control. Doc. 91 ¶ 82. Plaintiff was forced to delete the website, and the compliance was verified repeatedly. Doc. 91 ¶¶ 50, 52.

Unsatisfied that Plaintiff was not sanctioned, and realized Mathews does not have Plaintiff's consent to publish Plaintiff's academic work in Mathews' book, Mathews continued to make allegations against Plaintiff for an entire year. Finally, Plaintiff was sanctioned because Mathews alleged Plaintiff sent him "anonymous text messages." Doc. 91. Exh. F.

Plaintiff denied the allegation. Plaintiff pointed out these texts came from a business from Mathews' hometown and Mathews' colleague. Doc. 91. Exh. H. After the hearing, Plaintiff was accused of impersonating persons he never met or took any class with. Additionally, due to Mathews' new allegation that Plaintiff still secretly runs judmathews.com, his initial sanction of "psychiatric evaluation" was switched to "psychiatric sanction." Doc. 91. Exh. I.

Preliminary statement

Defendants' strategy appears to be asking the Court to forego the discovery and end this litigation by disagreeing with what Plaintiff alleged. This is not the law of this stage of the legal process. In deciding a motion to dismiss under Rule 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975). In other words, Plaintiff should have the benefit of the doubt, and Defendants must overcome hurdles to prove implausibility of Plaintiff's Complaint. Denying Plaintiff's allegation should be done via answer.

Additionally, Defendants appear to have misstated the pleading standard by claiming Plaintiff's supplemental claims should be pleaded under state law's fact pleading standard. "[U]nder a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case. . . ." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). Additional information is up for discovery, and Plaintiff does not need to plead every element.

Finally, Plaintiff must ask the Court to focus on the allegation against Plaintiff is Plaintiff sent an "anonymous text message" to Mathews. This allegation resulted in initial sanction of probation with transcription notation and psychiatric evaluation, and ultimately, year-long probation with psychiatric sanction. Other

than the "text messages" allegation, no other accusation was made against Plaintiff.

Argument

1. Defendants retaliated against Plaintiff for Plaintiff's publishment of website on judmathews.com

Student's off-campus speech is protected under the First Amendment. *B.L. v. Mahanoy Area Sch. Dist.*, 964 F.3d 170 (3d Cir. 2020) (*affirmed* in *Mahanoy Area Sch. Dist. v. B. L.*, No. 20-255 (June 23, 2021)). In *B.L.*, a student posted a vulgar message on social media about failing to make the school's cheerleading squad. *B.L.*, 964 F.3d 170, 175. The school district sanctioned B.L. by suspending her from the cheerleading squad, accusing her of violating the rule of "requiring cheerleaders to "have respect for [their] school, coaches, ... [and] other cheerleaders"; avoid "foul language and inappropriate gestures"; and refrain from sharing "negative information regarding cheerleading, cheerleaders, or coaches ... on the internet." *Id.*, at 176. The district court, third circuit, and the Supreme Court all ruled in favor of B.L. *Mahanoy Area Sch. Dist. v. B. L.*, No. 20-255, at *3. In another third circuit companion case, judges held a school district violated the First Amendment rights of a plaintiff when it suspended her for creating a private social media profile mocking the school principal and containing adult and explicit content. *J.S. ex Rel. Snyder v. Blue Mountain School*, 650 F.3d 915 (3d Cir. 2011). Both cases pointed out the standard for regulating student's speech is officials should "forecast substantial disruption of or material interference with school

activities." *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 514 (1969). *See also Dejohn v. Temple Univ*, 537 F.3d 301, 314, 316 (3d Cir. 2008) ("[The Goal of Tinker] is no less implicated on public university campuses throughout this country, where free speech is of critical importance because it is the lifeblood of academic freedom.", "Temple's administrators are granted less leeway in regulating student speech than are public elementary or high school administrators.").

Plaintiff's case is stronger than both *J.S.* and *B.L.*. Unlike in *J.S.* where the school principal was alleged to have a pedophilia tendency or in *B.L.* where vulgar language was used, Mathews was not accused of *anything* on the judmathews.com website. Doc. 91 ¶ 82. Denial of cheerleader team triggered First Amendment retaliation in *B.L.*. *B. L.*, No. 20-255, at *1 (June 23, 2021). Plaintiff was forced to go through four student conduct processes and firmly told by the law school student dean to stop publish any material on Sunday. Doc. 91 ¶ 50.

Defendants appear to be insisting Feldbaum's access to Plaintiff's mental health record is justified. Doc. 102, at 31. This groundbreaking explanation is irreconcilable with published University documents Doc. 91 ¶ 37, 131, and most importantly, Feldbaum's word before litigation was on the table. Doc. 91 ¶ 75.

If Feldbaum can simply access Plaintiff's mental health record and

determine forcing Plaintiff to go through psychiatric treatment would be helpful, why Feldbaum repeatedly asked for Plaintiff's "release form"? Why was the initial sanction "psychiatric evaluation" if Feldbaum and Costanzo, both who are not mental health professionals, can switch Plaintiff's sanction of "psychiatric evaluation" to "psychiatric sanction?" Defendants' explanation is irreconcilable with what happened and University's written policy.

Next, Defendants are avoiding discussion of the First Amendment retaliation claim by characterizing Plaintiff's publishment of the website as a mere "administrative and transactional act." Doc. 102, at 43. The record shows otherwise.

> Previously, he had spoken about using the site to post material about me, or selling it to someone else (he claims a Judson Mathews has approached him about it), or permanently deleting it. In terms of what he might post, he had previously spoken in passing of using it as a kind of fan site, highlighting my scholarship, but he had also mentioned that people sometimes buy a domain in someone's name and use it to post defamatory material, although he has not threatened to do so.
>
> Doc. 91. Exh C. Behavioral Threat Management Team Referral Form by Jud Mathews, at 4.

Plaintiff's publishment of website on judmathews.com is not even symbolic like *Tinker*'s "wearing of armbands." Publishment of a website is speech. The fear

of Mathews that triggered Plaintiff's student conduct process is the same as in *J.S.* and *B.L.* that some unwanted words might be published online.

2. Defendants manipulated Plaintiff's student disciplinary proceedings to sanction Plaintiff.

"When deciding 'what process is due in student disciplinary proceedings, courts interpreting and applying Goss have utilized the familiar three-part test from *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Doe v. Pa. State Univ.*, 336 F. Supp. 3d 441, 448 (M.D. Pa. 2018) (Hon. Matthew W. Brann). Three factors are: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976). No courts have ever held that any sanction short of expulsion deserves zero due process protection.

Appling to Plaintiff's case, the private interest would be Plaintiff's undisturbed education (which is tied to his legal status in the United States) and his autonomy to seek psychological help. The erroneous consequence of termination of Plaintiff's education, which was articulated in Plaintiff's "no-contact directive" as a consequence of violation, would be deportation of Plaintiff; the erroneous

psychiatric sanction along with year-long probation sanction will be (and have) reported to the bar association. Thus, Plaintiff's due process claim is unlike any cases Defendants cited because none of the students in Defendants' case might suffer deportation.

Defendants are aware of the grave consequence of psychiatric sanction: such sanction shows Plaintiff needs help, and such help must be a sanction in nature. Doc. 102, at 42. However, Defendants had no interest in ensuring a fair process. First, if as Defendants asserts the administrative hearing is an "independent review of the entirety of relevant and available information that will determine whether or not the respondent is responsible for the charge(s) issued" Doc. 102, at 28, then why Feldbaum asked Plaintiff to start the psychiatric sanction *before* an actual charge is made against Plaintiff? Doc. 91 ¶¶ 75, 145(c). Second, if Feldbaum was sincere about the student conduct process, why was there no follow-up? Why was Feldbaum so eager to obtain Plaintiff's consent regarding Mathews using Plaintiff's academic work? Doc. 91 ¶¶ 98, 117.

If what Plaintiff alleged is not manipulation and abuse of student conduct process, nothing is. Defendants are silent on all of these questions, but they must know mere recital of the rules and reiterating they followed will not suffice.

Still, Plaintiff cannot tell what interest Defendants were manically

protecting. Perhaps Defendants were protecting Mathews' feelings since Mathews was so disturbed by "anonymous text messages" and appears to hate being "spammed." However, instead of risking Plaintiff's legal education being terminated, a simpler solution exists: deleting the text messages and do not disclose phone numbers in the public. In addition, Mathews must dislike the solution Romero and Elkin came up with (deleting the domain and the website) since Mathews specifically asked Plaintiff not to delete the domain and the website. Such frustration has nothing to do with Plaintiff and using Plaintiff as a punchbag is unjust.

Additionally, the initial sanction of the psychiatric evaluation was switched to psychiatric sanction based on Mathews' allegation unrelated to the charging document. Notice is one crucial element of due process in a school context. *See e.g., Goss v. Lopez*, 419 U.S. 565, 575 (1975). Plaintiff was never informed, nor given notice that the domain transaction might be considered as a part of the sanction. Doc. 91. Exh. F. The only issue was text messages, and Mathews and Plaintiff only offered their explanation of the text messages. Such a surprise is unfair.

In essence, Defendants are asking this Court to adopt a law that will allow any universities to have no liability under due process as long as the student is "permitted to continue as a student at the University." *See* Doc 102, at 47. If such a

law is adopted, the Universities will have a free pass to extort students, giving no notice or opportunity to be heard as long as the student is not suspended. That is irreconcilable with *Mathews*' three-factor test, and cannot be the law.

3. Feldbaum is biased against Plaintiff

Allegation of the decisionmaker's manipulation of the student conduct process warrants discovery. *Sean Park v. Temple Univ.*, No. 18-1891, at *11 (3d Cir. Dec. 11, 2018). In *Sean Park*, the district court found a second hearing convened by the same decisionmaker did not suggest bias, thus dismissed the Complaint. *Park v. Temple Univ.*, CIVIL ACTION No. 16-5025, at *15 (E.D. Pa. Mar. 20, 2018) Third Circuit vacated district court's decision, pointed out "[t]he allegations may turn out to be totally unfounded . . . that is all that matters." *Sean Park*, No. 18-1891, at *11 (3d Cir. Dec. 11, 2018). In other words, Park's allegation that the University desired to expel Park by manipulating the proceedings to achieve and conceal that goal survives 12(b)(6). Plaintiff's right to an unbiased decisionmaker is clearly established at the time of Plaintiff's student conduct process. *Id.*, No. 18-1891, at *12.

What Feldbaum did in Plaintiff's case is far worse. In *Sean Park* the University held a meaningless repetitive hearing and withheld key information from Park, but after being faced with definitive evidence that the alleged

"anonymous text message" has nothing to do with Plaintiff, Feldbaum invented a crazy theory to achieve her desired result of sanctioning Plaintiff: Plaintiff somehow know Mathews' acquittances personally and impersonated as these people to send Mathews "anonymous text message." The outcome of Plaintiff's student conduct process is predetermined, shown by Feldbaum attempting to enforce the psychiatric sanction before a supposedly "a new round of more robust procedure overcame any purported improprieties." Doc. 91 ¶¶ 75, 145(c).

In sum, Feldbaum's manic pursuit of Mathews' trivial allegation regarding "anonymous text message," combined with Feldbaum's substantial involvement in a task force that is biased against a group of students Plaintiff belonged, show Feldbaum is biased against Plaintiff.

## Conclusion

Plaintiff was under the unwanted spotlight for two years of his legal education. Plaintiff's bar license is clouded by Defendants' reckless accusation. Correcting his record in federal court is never part of Plaintiff's legal education. Instead of helping Plaintiff to move forward, Defendants armed up with three teams of attorneys, all to justify sanctioning Plaintiff for "alleged anonymous text messages" without discovery. That can never happen.

Certificate of Compliance

I hereby certify that the foregoing brief complies with the word-count limit set forth in Local Rule 7.8(b)(2) in that it contains 2736 words, as determined by the word count feature of the word-processing system used to prepare the brief.

Certificate of Service

On the date set forth below, a true and correct copy of the foregoing Motion and Attachments were filed via the Court's ECF system. Defendants have access to the ECF system.

August 30, 2021

Respectfully submitted,

/s John Doe .

850 Toftrees Avenue, 711C
State College, PA 16803
johndoeprose@outlook.com
814-699-0985