# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN DOE 1438,                               )
           Plaintiff,                  )
                        )  No. 4:19-CV-1438
          v.                                )
                        )  (Hon. Brann)
THE       PENNSYLVANIA      STATE  )
UNIVERSITY; *et al.*,                        )  Electronically Filed
           Defendants.                 )

## Defendants' Brief in Opposition to Plaintiff's Motion for Reconsideration

James A. Keller (PA78955)
Carolyn A. Pellegrini (PA307026)
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
Phone: (215) 972-1964 / 7121
James.Keller@saul.com
Carolyn.Pellegrini@saul.com

Cory S. Winter (PA306552)
Saul Ewing Arnstein & Lehr LLP
2 North 2nd Street, 7th Floor
Harrisburg, Pennsylvania 17101
Phone: (717) 257-7562
Cory.Winter@saul.com

Dated: April 7, 2022

## Table of Contents

Table of Authorities ................................................................. iii

I.  Background. .................................................................... 1

    A.  Relevant factual background as alleged in the Second Amended
        Complaint. ................................................................. 1

        1.  Doe's purchase of judmathews.com and related student-
            conduct proceedings. ................................................. 2

        2.  Doe contacts Professor Mathews despite the University's
            properly issued no-contact directive. ............................... 6

        3.  Student-conduct proceedings against Doe. ............................ 7

    B.  Relevant procedural history. .............................................. 9

II. Question presented. .......................................................... 10

III. Argument. ................................................................... 10

    A.  In treating Doe's initial Motion for Reconsideration as objections
        to the R&R, the Court has already evaluated Doe's arguments
        under a more favorable standard than if the Court treated Doe's
        Motion under the standard for motions for reconsideration. ............. 11

    B.  The Court committed no error in dismissing Doe's claims for due-
        process violations under the Fourteenth Amendment. .................... 12

        1.  Doe failed to allege that he was subject to a legally
            recognized stigma. .................................................. 13

            a.  Doe was not labeled as a "criminal impersonating
                another person." ................................................ 13

            b.  Doe did not assert a legally recognizable stigma
                based on his knowingly violating a University
                directive. ...................................................... 14

39846352.3

2.  Even if Doe had sufficiently alleged a legally recognizable stigma, he failed to sufficiently allege the "plus" component of the "stigma-plus test."........................................15

C.  Doe failed to state a colorable claim for retaliation under the First Amendment, and the Court correctly dismissed that claim with prejudice. ...........................................................................19

**IV.  Conclusion. ...................................................................................20**

# Table of Authorities

**FEDERAL CASES**

*Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742 (3d Cir. 2019) ...........................19

*Chappelle v. Varano*, No. 4:11-cv-00304, 2014 WL 2808608 (M.D. Pa. June 19, 2014) (Brann, J.)................................................................10, 11

*Good v. City of Sunbury*, 352 F. App'x 688 (3d Cir. 2009) ....................................15

*Goss v. Lopez*, 419 U.S. 565 (1975) ................................................................12, 18

*Hamilton v. Hamilton*, No. 4:19-cv-01517, 2020 WL 487128 (M.D. Pa. Jan. 30, 2020)................................................................................11

*Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006) ........................12, 13, 14

*In re Energy Future Holdings Corp.*, 904 F.3d 298 (3d Cir. 2018) .......................10

*Osei v. Temple Univ.*, 518 F. App'x 86 (3d Cir. 2013) ...........................................12

*Shutt v. Parks-Miller*, No. 4:16-cv-1575, 2017 WL 1738450 (M.D. Pa. May 4, 2017)...................................................................................16

*Zimmerlink v. Zapotsky*, 539 F. App'x 45 (3d Cir. 2013) .......................................19

39846352.3

Plaintiff John Doe seeks reconsideration of the Court's Order of March 10, 2022, which adopted Magistrate Judge Mehalchick's Report and Recommendation (Doc. 108) (the "R&R"). The R&R, of which Doe also sought reconsideration, carefully, thoroughly, and accurately analyzed Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. After a *de novo* review of the R&R, the Court correctly granted Defendants' Motion to Dismiss, dismissed with prejudice the Second Amended Complaint, and ordered the case closed. The instant Motion for Reconsideration filed by Plaintiff John Doe 1438 fails to satisfy the very high standard for reconsideration. The Court should deny the Motion and end this years-long litigation.

## I.    Background.

### A.    Relevant factual background as alleged in the Second Amended Complaint.

Plaintiff John Doe 1438 first came to the United States to attend law school at the University in fall 2017. (Doc. 91 ¶ 11.) Though Doe does not specifically admit that he graduated from the University's law school, he does admit that he passed the bar examination. (*Id.* ¶ 123.)

Relevant to his Motion, Doe's Second Amended Complaint focuses on three issues concerning the University and some University employees: (1) questions surrounding Doe's unilateral purchase of an internet domain name in the name of law Professor Jud Mathews, for whom Doe was working; (2) Doe contacting Prof.

Mathews via text message despite a no-contact directive issued by the University; and (3) student-conduct proceedings against Doe.

### 1. Doe's purchase of judmathews.com and related student-conduct proceedings.

During the spring semester of Doe's first year in law school (2017-2018), he conducted research for his civil procedure professor, Prof. Mathews. (*See* Doc. 91 ¶¶ 11, 13-14.) Although Prof. Mathews never made any request or gave any indication that he wished to have a website to showcase his work, Doe approached Prof. Mathews on April 22, 2018, and asked if he could purchase an internet domain in Prof. Mathews' name. (*See id.* ¶ 15.) Prof. Mathews allegedly agreed, if Doe could "get a good deal." (*See id.* ¶ 16.) Doe alleges that he then purchased the domain name "judmathews.com," using points he redeemed from LexisNexis. (*See id.* ¶ 17.)

After Doe informed Prof. Mathews that he purchased a domain name on April 26, 2018, Prof. Mathews expressed that he was "unhappy with the arrangement." (*See id.* ¶¶ 17-18.) Doe offered to give Prof. Mathews the unwanted domain name for free, but Prof. Mathews purportedly declined Doe's offer and offered to purchase it instead. (*See id.* ¶ 19.) Doe told Prof. Mathews that if Prof. Mathews paid for the domain name, then Doe would have purchased it "for the

2

sole purpose of reselling" it, in violation of a contract with Lexis.[1] (*See id.* ¶ 20.) Doe alleges that Prof. Mathews ultimately agreed that he would accept the domain name as a "gift," but would not pay Doe for the unwanted domain name after Doe stated that his being paid for the domain would "break the law."[2] (*See id.* ¶¶ 21-23.)

Doe continued to work as a research assistant for Prof. Mathews in summer 2018 following Doe's first year of law school. (*See id.* ¶ 24.) During this time, Doe viewed Prof. Mathews as a "father figure" and, according to the Second Amended Complaint, he gave Prof. Mathews a gift on Father's Day. (*See id.* ¶ 28.) Doe alleges that as part of Doe's research, Prof. Mathews asked Doe to make up citations and, on July 2, 2018, to "copy [information] directly from a commercial database." (*See id.* ¶¶ 31-33.) Doe avers that he felt "uncomfortable[]" with this practice and explained this to Prof. Mathews. (*See id.* ¶¶ 34.) At some point during that conversation, Doe alleges that Prof. Mathews "threw a pen at Plaintiff." (*See id.* ¶ 35.)

---

[1]     It is unclear from the Second Amended Complaint to what contract with Lexis Doe is referring.

[2]     Later in his Second Amended Complaint, however, Doe alleges that at the end of the summer, Doe offered to "relinquish the domain" name to Professor Mathews (as a gift) and "Professor Mathews strongly opposed the idea." (Doc. 91 ¶ 45.)

After the alleged "pen incident," Doe and Prof. Mathews set up a video conference on July 12, 2018. (*See id.* ¶ 39.) Doe contends that during the video conference, Prof. Mathews conveyed to Doe that Doe's potential future employers may contact Prof. Mathews, and this statement somehow made Doe feel "threatened." (*See id.* ¶¶ 40-41.) Doe continued to work for Professor Mathews for the remainder of summer 2018. (*See id.* ¶ 42.)

On August 7, 2018, Doe claims that Prof. Mathews told Doe that he did "not want to extend this relationship." (*See id.* ¶ 46.) Doe responded by informing Prof. Mathews that he should stop interacting with Doe, "informing [Professor] Mathews that *this is the advice from the University Counseling Service*, and if necessary, invite the student dean to intervene to resolve remaining issues." (*See id.* ¶ 47 (emphasis added).) In other words, Doe wished for there to be no contact between him and Prof. Mathews. (*See id.*)

Doe then posted a "mock website" on judmathews.com related to Doe's "next project," coincidentally named "JUD," which Doe admits is Prof. Mathews' nickname. (*See id.* ¶¶ 13, 48.) Doe does not allege or explain the substance of the content on the "mock website." (*See id.*)

Doe began working with another professor in another department after his employment with Prof. Mathews ended. (*See id.* ¶ 49.)

4

On August 13, 2018, Dean Elkins, the Student Dean of the University's law school, wrote to Doe by email and instructed Doe "to delete the domain, unpublish the website, and return research materials to [Professor] Mathews." (*See id.* ¶ 50.) At a meeting on August 15, 2018, Dean Elkins and Dean Romero (Penn State Law's associate dean for academic affairs) informed Doe that he would not be able to enroll in any of Prof. Mathews' classes. (*See id.* ¶ 51.) Doe does not allege that he objected to this instruction, or otherwise sought to overturn it. (*See id.*) Similarly, Doe does not allege that his academic progress was limited due to not being able to enroll in a class taught by Prof. Mathews. (*See id.*)

Doe and Karen Feldbaum, the Interim Senior Director of the Office of Student Conduct at the University, then met on August 17, 2018, to discuss an administrative action that Feldbaum was issuing. (*See id.* ¶ 54.) As a result of the Doe-Feldbaum meeting, Doe received an administrative directive not to have any "contact—either directly or indirectly, in person, electronically, by telephone or any medium, physical or verbal with Professor Jud Mathews." (*See id.* ¶ 57, Exh. 4.) The administrative directive issued by Feldbaum warned Doe, in writing, that violating the administrative directive "is a violation of the student code of conduct and you may be subject to disciplinary action and sanctions including interim suspension, suspension, or expulsion from the University." (*See id.* Exh. 4.)

### 2.   Doe contacts Professor Mathews despite the University's properly issued no-contact directive.

Feldbaum contacted Doe on February 8, 2019, after becoming concerned that Doe may have initiated contact with Professor Mathews. (*See id.* ¶ 61.) Feldbaum scheduled a meeting for February 20, 2019, "to get [Doe's] perspective." (*See id.* ¶ 62.) However, due to a heavy snowstorm on February 20, 2019, the University canceled all classes and activities for that day. (*See id.* ¶ 63.) Despite the University's closure on February 20, Doe appeared at the Student Conduct Office for the previously scheduled meeting; Feldbaum was not able to attend due to the University's closure and the weather conditions. (*See id.* ¶¶ 64-65.) That same day, Feldbaum contacted Doe via email and informed him that Prof. Mathews had received a number of text messages from unknown numbers. (*See id.* ¶¶ 66-69.) By their context and substance, Prof. Mathews and Feldbaum believed the messages were coming from Doe, in violation of the no-contact directive. (*See id.*)

In response to Feldbaum's email, Doe denied having "any association" with "text messages." (*See id.* ¶ 70.) Feldbaum issued a charge and proposed sanction under the University's Student Code of Conduct (the "Code") for failing to comply with the administrative directive that prevented Doe from contacting Mathews. (*See id.* ¶ 72.) The proposed sanctions were "conduct probation with transcript notation" and "counseling assessment." (*See id.* ¶ 72, Exh. 6.) Feldbaum asked that

Doe sign a release so that Feldbaum could ensure that Doe completed his counseling assessment. (*Id.* ¶ 75.) Consistent with the Code, Doe contested the charges and requested an administrative hearing. (*See id.* ¶ 74.)

### 3.   Student-conduct proceedings against Doe.

In preparation for the Administrative Hearing, on March 4, 2019, Doe received documents, including a "Behavioral Threat Management Team Referral Form,"[3] completed by Prof. Mathews and a "Statement to the Hearing Officer" submitted by Professor Mathews. (*See id.*, Exh. 3, Exh. 7.) Prof. Mathews' statement included the content of the concerning text messages and stated that "for reasons of timing, content, and context . . . it is difficult to imagine these [five] text[s] coming from anyone other than [Doe]." (*See id.* Exh. 7.) While Doe requested that the administrative hearing be recorded, Feldbaum (correctly) denied Doe's request because, under the University's Code, Administrative Hearings typically are not recorded. (*See id.* ¶ 77.)

Doe's hearing took place on March 12, 2019. Feldbaum printed out all the documentation and evidence. (*See id.* ¶ 86.) During the hearing, Doe was given the opportunity to speak and, according to his Second Amended Complaint, he offered his perspective regarding the domain transaction (apparently as background). (*See*

---

[3]   The "Behavioral Threat Management Team Referral Form" was dated August 10, 2018, and written by Professor Mathews. (Doc. 91, Exh. 3.) Mathews was advised to file this form by Dean Elkins and Ben Locke (the "head of CAPS"). (*See id.*)

*id.* ¶ 90.) Doe does not claim that he testified in defense of the charge that he contacted Prof. Mathews in violation of the administrative directive. (*See id.*) After Doe finished his testimony, Prof. Mathews was given an opportunity to speak. (*See id.* ¶ 92.)

Feldbaum was then notified by the hearing authority (in the form of a report by Defendant Costanzo, who was part of the hearing authority at the administrative hearing), that a determination was made that Doe would be sanctioned to conduct probation through fall 2019 with concurrent counseling at University Counseling Services. (*See id.* ¶ 108.)

In response to his low-level sanction, Doe threatened Feldbaum on March 14, 2019, with a lawsuit. (*See id.* ¶ 113.) Feldbaum replied by giving Doe information for the University's Office of General Counsel. (*See id.*) Also on March 14, Feldbaum informed Doe that she spoke with the University's Counseling Services (also known as "CAPS") and confirmed that CAPS was "willing to continue to meet with you on a regular basis." (*See id.* ¶ 114.)

Doe attempted to file an appeal of the conduct sanction on March 19, 2019; however, consistent with the Code, Feldbaum correctly informed Doe that the Code does not provide for an appeal where the sanction is less than a suspension. (*See id.* ¶¶ 115-116.)

39846352.3

**B.     Relevant procedural history.**

Defendants timely filed a Motion to Dismiss seeking the complete dismissal of the Second Amended Complaint. (Doc. 92.) The parties fully briefed the Motion. (Docs. 92, 102, 106, 107.) On January 21, 2022, Magistrate Judge Mehalchick issued her R&R, recommending that Defendants' Motion to Dismiss be granted, that the Second Amended Complaint be dismissed, and that the case be closed. (Doc. 108.) Doe filed a Motion for Reconsideration on February 4, 2022. (Doc. 109.) Defendants filed an opposition brief to that reconsideration motion on February 18, 2022. (Doc. 110.)

By Order dated March 10, 2022, the Court (Brann, J.) construed Doe's Motion for Reconsideration as timely filed objections to the R&R. (Doc. 111, at 1.) Following the resulting *de novo* review of the R&R as well as Doe's objections, the Court adopted the R&R, granted Defendants' Motion to Dismiss, dismissed Doe's Second Amended Complaint with prejudice, and ordered the Clerk of Court to close the case. (*Id.* at 2.)

Seeking reconsideration of the Court's March 10 Order, Doe filed the instant Motion for Reconsideration "to avoid injustice." (Doc. 112, at 2.) Defendants now file this Brief in opposition to that Motion.

39846352.3

## II.      Question presented.

Should the Court deny Doe's Motion for Reconsideration because the Court does not need to reconsider its March 10 Order to prevent manifest injustice?

Suggested answer: Yes.

## III.      Argument.

Motions for reconsideration are disfavored, present a very high standard for the movant, and should be sparingly granted. *Chappelle v. Varano*, No. 4:11-cv-00304, 2014 WL 2808608, at *1 (M.D. Pa. June 19, 2014) (Brann, J.) (internal quotation marks and citations omitted).[4] While there are three potential grounds for reconsideration, Doe raises only one of them: "to prevent manifest injustice." *Id.* Simply disagreeing with the Court's analysis or conclusion does not constitute manifest injustice. *Id.* Doe must instead establish that the Court "committed a 'direct, obvious, [or] observable error' . . . and one that is of at least some importance to the larger proceedings." *In re Energy Future Holdings Corp.*, 904 F.3d 298, 312 (3d Cir. 2018) (internal citation omitted) (citing *Manifest Injustice*, Black's Law Dictionary (10th ed. 2014)).

Doe's Motion falls well short of the reconsideration standard. Doe's Motion instead reflects his "mere disagreement" and requests that the Court "simply

---

[4]      All unreported cases are attached to this Brief as exhibit A.

rethink a decision it has already made." *Chappelle*, 2014 WL 2808608, at *1. The Court should decline to do so.

> **A.    In treating Doe's initial Motion for Reconsideration as objections to the R&R, the Court has already evaluated Doe's arguments under a more favorable standard than if the Court treated Doe's Motion under the standard for motions for reconsideration.**

Doe first complains that the Court improperly treated his initial Motion for Reconsideration as objections to the R&R. (Doc. 112, at 2 n.1.) Doe fails to appreciate that the Court's treatment of Doe's initial motion as objections actually inured to his benefit.

As this Court correctly observed, the standard of review of a report and recommendation, triggered by timely filed objections, is *de novo*. (Doc. 111, at 1-12 (quoting *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017)).) A motion for reconsideration, by contrast, provides far more deference to the initial decision. *Chappelle*, 2014 WL 2808608, at *1.

There was nothing improper with the Court treating Doe's initial motion as objections to the R&R; this Court has done so before. *See, e.g.*, *Hamilton v. Hamilton*, No. 4:19-cv-01517, 2020 WL 487128, at *1 (M.D. Pa. Jan. 30, 2020). As Doe failed to convince the Court that the R&R should be rejected under a *de novo* standard, he cannot fare any better under the much more stringent reconsideration standard.

11

**B.** **The Court committed no error in dismissing Doe's claims for due-process violations under the Fourteenth Amendment.**

The Fourteenth Amendment's Due Process Clause prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Without alleging an interest protected under the Due Process clause, a plaintiff cannot state a Fourteenth Amendment claim. *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). In the context of student discipline, there is minimal due process required for a student unless they are facing suspension or expulsion, which Doe was not. *Goss v. Lopez*, 419 U.S. 565, 581 (1975); *Osei v. Temple Univ.*, 518 F. App'x 86, 88 (3d Cir. 2013).

Alleging an injury to one's reputation is not enough to claim an injury to one's liberty interest protected by the Due Process Clause. *Hill*, 455 F.3d at 236 (quoting *Versage v. Twp. of Clinton, N.J.*, 984 F.2d 1359, 1371 (3d Cir. 1993)). Rather, "mak[ing] out a due process claim for deprivation of a liberty interest in reputation" requires a plaintiff to "show a stigma to his reputation plus deprivation of some additional right or interest." *Id.* (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)).

Doe argues that he was subject to two stigmas: being "labeled a criminal impersonating another person[] and knowingly violating a University directive." (Doc. 112, at 5.) The "plus," according to Doe, is the University's sanction of

12

"psychiatric treatment." (*Id.*) Doe's arguments lack merit and should be rejected by the Court.

**1.   Doe failed to allege that he was subject to a legally recognized stigma.**

To establish a stigma, a plaintiff must "allege[] that the purportedly stigmatizing statement(s) (1) were made publicly . . . and (2) were false." *Hill*, 455 F.3d at 236 (internal citations omitted) (citing cases). Doe failed to allege facts to support either prong of the "stigma" element.

a.   Doe was not labeled as a "criminal impersonating another person."

As confirmed by the Administrative Hearing report attached to Doe's Second Amended Complaint (Doc. 91-9), Doe was not sanctioned by the University for allegedly "impersonating another person" or committing a crime. Rather, Doe was sanctioned only for failing to comply with a University directive. (*Id.*) Particularly, the University sanctioned Doe for "sending anonymous text messages" to Prof. Mathews, despite being prohibited from having any contact with Prof. Mathews. (*Id.*) It was *Doe* who brazenly claimed that the text messages were coming from others when they plainly were not: Doe "speculates that the anonymous texts in question are not anonymous in that the phone number from which they came belong to individuals that he has identified via an internet

13

search." (*Id.*) Doe made these statements. He cannot assert that the University made false statements about him.

Further, Doe failed to allege, and cannot argue, that these allegedly false statements "were made publicly." *Hill*, 455 F.3d at 236. The reality is that *Doe himself* has voluntarily made all of the following public by filing this lawsuit: (1) a Behavioral Threat Management Team Referral Form (Doc. 91-3), (2) a notification of administrative directive (Doc. 91-4), (3) a letter from a University law-school assistant dean (Doc. 91-5), (4) a student affairs Conference Summary Form (Doc. 91-6), (5) Prof. Mathews' written statement to the University's hearing officer (Doc. 91-7), (6) Doe's own statement to the University's hearing officer (Doc. 91-8), and (7) the University's Administrative Hearing report (Doc. 91-9). None of the documents (or the contents) referenced in the preceding sentence have been publicized anywhere except when Doe published them himself in filing this lawsuit and supporting papers.

> **b.    Doe did not assert a legally recognizable stigma based on his knowingly violating a University directive.**

Doe's argument on this point is essentially a rehash of his repeatedly unsuccessful argument that he did not contact Prof. Mathews by text message after being prohibited from doing so. Indeed, the University found Doe responsible for violating that administrative directive prohibiting further contact with Prof. Mathews. Doe may disagree with the University's findings, but he does not dispute

that the University found him responsible for violating an administrative directive. (Doc. 91-9.) Any statement that Doe was found responsible for violating an administrative directive was true, not false.

Further, Doe does not argue that Defendants have publicly announced that he was found responsible for violating an administrative directive. To the extent that Doe's student discipline at the University is public knowledge, it is because Doe himself has repeatedly publicized information about it.

### 2. Even if Doe had sufficiently alleged a legally recognizable stigma, he failed to sufficiently allege the "plus" component of the "stigma-plus test."

The "plus" component of the stigma-plus test requires a plaintiff to assert a "deprivation of some additional right or interest." *Good v. City of Sunbury*, 352 F. App'x 688, 690 (3d Cir. 2009) (quoting *Dee v. Borough of Dunmore*, 549 F.3d 225, 233-34 (3d Cir. 2008)). The additional right or interest required to satisfy the stigma-plus test may not be abstract but must be a "sufficiently 'tangible interest.'" *Id.* at 691 (quoting *Paul*, 424 U.S. at 701).

This Court, approvingly quoting a decision from the Western District of Pennsylvania, explained when "something other than the loss of government employment constitutes the necessary 'plus' to maintain an action under the Fourteenth Amendment":

> The plus prong is typically termination of employment, but reputational damage that occurs "in the course of or is accompanied

15

> by a change or extinguishment of a right or status guaranteed by state law or the Constitution" is actionable. . . . Although deprivation of the "liberty to pursue a calling or occupation" or to "earn a living" have been deemed sufficient to satisfy the plus prong, a generalized "possible loss of future employment opportunities," and "financial harm" are insufficient to support a reputation-based due process claim.

*Shutt v. Parks-Miller*, No. 4:16-cv-1575, 2017 WL 1738450, at *7-8 (M.D. Pa. May 4, 2017) (quoting *Kahan v. Slippery Rock Univ. of Pa.*, 50 F. Supp. 3d 667, 711 (W.D. Pa. 2014), *aff'd*, 664 F. App'x 170 (3d Cir. 2016) (internal citations omitted)).

Here, Doe argues that the University's inclusion of a purported "sanction" of "counseling through CAPS"[5] (Doc. 91-9, at 1) constituted the "plus" under the stigma-plus test. (Doc. 112, at 6.) Doe supports this position, as he has done in the past, by comparing the receipt of mental health counseling to being labeled a sex offender. (*Id.* at 5-7.)

In addition to being horribly offensive, Doe's argument misses the mark because Doe has not alleged that his alleged reputational damage "occur[red] in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." *Shutt*, 2017 WL 1738450, at *8

---

[5] Doe has exaggerated this sanction by referring to it as a "psychiatric sanction." (*See, e.g.*, Doc. 112, at 5.) Doe's characterization is not accurate, as the sole requirement was that Doe continue with the counseling he was *already receiving* at CAPS. (Doc. 91-9.) There was no requirement that Doe be treated by a psychiatrist or receive and use psychiatric medication. (*Id.*)

(quoting *Kahan*, 50 F. Supp. at 711 (internal quotation marks omitted)). Indeed,

Doe's Second Amended Complaint contains multiple references to Doe's receipt

of counseling services at the University before he was sanctioned:

- Paragraph 36: "Plaintiff called Counseling and Psychological service [*sic*] at The University to seek support";

- Paragraph 47: "Plaintiff wrote Mathews that he should stop any interaction with Plaintiff, informing Mathews that *this is the advice from the University Counseling Service*";

- Paragraph 114: Feldbaum wrote to Doe that CAPS is "willing to *continue to meet with you* on a regular basis";

- Exhibit 3 (Doc. 91-3, at 3): In submitting a referral to the University's Behavioral Threat Management Team, Prof. Mathews wrote, "We had a long conversation in which he [Doe] admitted he had an unhealthy obsession with me [Prof. Mathews], and *had spoken with the people at CAPS about it. CAPS had advised him*, among other things, to stop contact with me. . . . I encouraged him *to continue seeing the people at CAPS*. . . . He would *continue to see the CAPS people* . . . .";

- Exhibit 9 (Doc. 91-9, at 2-3): In his report, the University's administrative hearing officer wrote, "[T]he fact that [Doe] was manifesting some obsessive behavior seems clear from various elements of the e-mail correspondence that was part of the information packet, some of which referred to *counseling received through CAPS*," and Doe "appears to have taken steps to address the circumstances underlying his behavior *with the help of Penn State's CAPS*."

(emphases added).

Doe's attempt to characterize his counseling sanction as an imposition of

any right (let alone a constitutional one) is invalid and inconsistent with his own

17

pleadings. As a matter of law, Doe's sanction of counseling did not alter or change Doe's status or any legally recognized right.

Further, it is relevant that the sanction imposed against Doe occurred while he was a law student. A public university need provide only minimal due process for a student unless the student is facing suspension or expulsion. *Goss v. Lopez*, 419 U.S. 565, 581 (1975). Doe was facing neither. More tellingly, Doe does not allege (nor could he) that the outcome of the University's disciplinary process materially affected his ability to attend class, earn course credit, or eventually graduate with a law degree from the University. Instead, he confirms that he passed the bar examination. (Doc. 91 ¶ 123.)

*     *     *

Doe cannot satisfy either prong of the stigma-plus test necessary to establish harm to his liberty interest under the Fourteenth Amendment. There is no basis for this Court to reconsider its correct decision to dismiss Doe's claims under the Fourteenth Amendment.[6]

---

[6]  Doe's rambling arguments in the latter portion of his Motion, where he attempts to equate his alleged plight with that of children who have experienced sexual abuse, and implies that Professor Mathews is somehow like an abuser, are abhorrent. Defendants would ordinarily not even acknowledge these attacks: they are reprehensible for any litigant, never mind one who wishes to become a member of the bar. But based on Doe's conduct throughout this case, and his penchant to mischaracterize Defendants' positions, Defendants are compelled to respond (at least in passing) to Doe's misguided arguments via this footnote. Defendants strongly, vehemently reject these (non-pled) assertions.

18

**C.    Doe failed to state a colorable claim for retaliation under the First Amendment, and the Court correctly dismissed that claim with prejudice.**

Though Doe's arguments in his various motions have shifted a bit, the crux of Doe's First Amendment claim is that he was sanctioned as a result of the "publishment" [*sic*] of judmathews.com. (Doc. 91 ¶ 139.) There are no allegations in Doe's operative complaint, however, about the "speech" set forth on that website. Instead, Doe's sole focus was on his creation of the judmathews.com website domain, and the Court appropriately focused on same.

To state a claim for First Amendment retaliation, a plaintiff must plead "that (1) he engaged in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link [existed] between the constitutionally protected conduct and the retaliatory action." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (quoting *Palardy v. Twp. of Millburn*, 906 F.3d 76, 80-81 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 2011 (2019) (other citations and quotations omitted)); *see also Zimmerlink v. Zapotsky*, 539 F. App'x 45, 48 (3d Cir. 2013).

The R&R, adopted by this Court's Order, correctly notes that Doe claimed that his "his creation of a website on judmathews.com is his valid [F]irst [A]mendment exercise." (Doc. 108, at 14 (quoting Doc. 91 ¶ 137).) The Court

appropriately evaluated whether Doe's creation of the "judmathews.com" domain itself was conduct protected by the First Amendment, and determined the answer was no.

The Court used Doe's own words as the basis for its reasoning that "judmathews.com does not provide any 'commentary or criticism' regarding Mathews, his work, or any other communicative message." (Doc. 108, at 15 (citing *Web-adviso v. Trump*, 927 F. Supp. 2d 32, 47-48 (E.D.N.Y. 2013).)

In dismissing Doe's First Amendment claim, the Court did not commit clear error, and there is no manifest injustice. The Court correctly concluded that Doe's alleged conduct, as set forth in his Second Amended Complaint, does not rise to the level of conduct protected by the First Amendment. This determination was correct, and there is no basis for reconsideration.

## IV. Conclusion.

Doe's Motion for Reconsideration presents no basis for the Court to reconsider its March 10 Order. The Court should therefore deny the Motion.

39846352.3

Respectfully submitted,

Dated: April 7, 2022

/s/ Cory S. Winter

James A. Keller (PA78955)
Carolyn A. Pellegrini (PA307026)
Saul Ewing Arnstein & Lehr LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102
James.Keller@saul.com—(215) 972-1964
Carolyn.Pellegrini@saul.com— (215) 972-7121

Cory S. Winter (PA306552)
Saul Ewing Arnstein & Lehr LLP
2 North 2nd Street, 7th Floor
Harrisburg, Pennsylvania 17101
Cory.Winter@saul.com—(717) 257-7562

*Attorneys for Defendants*

39846352.3

**Word Count Certification**

In accordance with L.R. 7.5, I hereby certify that the foregoing brief contains 4,600 words, as calculated by Microsoft Word.

Date: April 7, 2022                              /s/ Cory S. Winter
                                                 Cory S. Winter

**Certificate of Service**

I hereby certify that on the date set forth below, I caused a true and correct copy of the foregoing Brief to be served upon the following via the Court's ECF system:

John Doe
850 Toftrees Avenue, 711C
State College, Pennsylvania 16803
*Plaintiff*

Date: April 7, 2022                    /s/ Cory S. Winter

Cory S. Winter

23
