# Exhibit A

2014 WL 2808608
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

Damon CHAPPELLE, Plaintiff,
v.
David VARANO, Michelle Kodack,
Deborah Herbst, Defendants.

Civ. No. 4:11–CV–00304.
|
Signed June 19, 2014.

**Attorneys and Law Firms**

Su Ming Yeh, Pennsylvania Institutional Law Project, Philadelphia, PA, for Plaintiff.

Timothy P. Keating, Office of Attorney General of Pennsylvania, Harrisburg, PA, for Defendants.

**MEMORANDUM**

MATTHEW W. BRANN, District Judge.

**I. BACKGROUND**

 *1 Before the Court is the a Motion for Reconsideration of the Court's partial denial of summary judgment filed by Defendants Deborah Herbst, Michelle Kodack, and David A. Varano (ECF No. 64). The Court articulated the pertinent facts at length in the Memorandum accompanying its Summary Judgment Order and, as it writes primarily for the parties, it declines to repeat them here. *See generally* Ct. Mem. Mot. Summ. J., Oct. 30, 2013, ECF No. 62 [hereinafter Mem.].

Plaintiff's remaining claims involve a 42 U.S.C. § 1983 allegation that the Defendants were deliberately indifferent to the Plaintiff's over-detention in a prison facility in violation of the Eighth Amendment to the United States Constitution. In its Motion for Reconsideration, the Defendants assert that: (1) Plaintiff did not meet its evidentiary burden to survive summary judgment on its claim; (2) the Court relied on disputed facts that are immaterial and do not preclude summary judgment; (3) the Defendants are entitled to qualified immunity on Plaintiff's claims; and, (4) the favorable termination rule, articulated in *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), bars Plaintiff's claims. None of the Defendants' arguments are availing and their Motion is consequently denied.

**II. DISCUSSION**

  A. LEGAL STANDARDS

1. *Motion for Reconsideration*
"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985). A court should grant a motion for reconsideration if the party seeking reconsideration shows: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999).

"A motion for reconsideration is not properly grounded on a request that the Court simply rethink a decision it has already made ." *Douris v. Schweiker,* 229 F.Supp.2d 391, 408 (E.D.Pa.2002). In such a motion, "parties are not free to relitigate issues that the Court has already decided." *United States v. Jasin,* 292 F.Supp.2d 670, 676 (E.D.Pa.2003) (internal citation and quotations omitted). "The standard for granting a motion for reconsideration is a stringent one .... [A] mere disagreement with the court does not translate into a clear error of law." *Mpala v. Smith,* CIV. 3:CV–06–841, 2007 WL 136750, *2 (M.D.Pa. Jan.16, 2007) (Kosik, J.) *aff'd,* 241 F. App'x 3 (3d Cir.2007). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Cont'l Cas. Co. v. Diversified Indus., Inc.,* 884 F.Supp. 937, 943 (E.D.Pa.1995).

  2. 42 U.S.C. § 1983
The Court previously articulated the pertinent standard on the merits in this action as follows:

 *2 It is well established that imprisonment for a significant period beyond the term of one's sentence may constitute cruel and unusual punishment in violation of the

Eighth Amendment. *Sample v. Diecks,* 885 F.2d 1099, 1109–10 (3d Cir.1989). Federal law provides a cause of action against any "person who, under color of" state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution" under 42 U.S.C. § 1983.

To establish § 1983 liability on this issue, a plaintiff must first demonstrate that a prison official had knowledge of the prisoner's problem, and therefore of the risk that unwarranted punishment may be inflicted. *Sample,* 885 F.2d at 1110. "Second, the plaintiff must show that the official either failed to act or took only ineffectual action under the circumstances indicating that [the official's] response to the problem was a product of deliberate indifference to the prisoner's plight." *Id* . Third, the plaintiff must prove causality—namely, that there was "a connection between the official's response to the problem and the infliction of the unjustified detention." *Id.*

Mem., at 9.

### B. ANALYSIS OF MERITS

#### 1. *Plaintiff Presented Credible Evidence*

The first prong of the test articulated by the United States Court of Appeals for the Third Circuit in *Sample v. Diecks,* 885 F.2d 1099, 1109–10 (3d Cir.1989), requires that the Plaintiff demonstrate the offending prison official had knowledge of the prisoner's issue. Furthermore, the Plaintiff must present "credible evidence" corroborating his claim that this sentence was in error. *See, e.g., Askew v. Kelchner,* CIV A 104–CV–0631, 2007 WL 763075, *6 (M.D.Pa. Mar.7, 2007) (Conner, J.).

Essentially attempting to relitigate issues already decided by the Court, the Defendants assert the Plaintiff's credible evidence is not sufficient to survive summary judgment. While courts have held mere verbal complaints are insufficient as credible evidence[1], others have held that filing prison inmate form complains satisfied the notice requirement.[2] In *Sample,* an unspecified "contact" to a records officer was sufficient. *Sample,* 885 F.2d at 1103.

---

1  *Askew v. Kelchner,* CIV A 104–CV–0631, 2007 WL 763075, *6 (M.D.Pa. Mar.7, 2007).

2  *Bosold v. Warden, SCI–Somerset,* CIV.A. 11–4292, 2013 WL 315714, *5–6 (E.D.Pa. Jan.28, 2013).

In this case, Chappelle established the notice requirement with respect to the pertinent Defendants by both written and oral means numerous times. Defendants Varano, Kodak, and Herbst all acknowledged that they were aware of Chappelle's complaints that he was being held past his maximum date —this is sufficient to establish knowledge under the test in *Sample.* See *Sample,* 885 F.2d at 1109–10.

The Defendants also attempt to rely on a recent Third Circuit case, *A.G. v. Lower Merion School Dist.,* 542 Fed. App'x 194 (3d Cir.2013), which deals with deliberate indifference in the context of a claim under the Americans with Disabilities Act and the Rehabilitation Act. As the claim in this case deals with deliberate indifference in the context of the Eighth Amendment, which has its own extensive body of law articulated in part in the Court's summary judgment memorandum, *A.G.* is inapposite to this case. *See, e.g ., Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Sample,* 885 F.2d at 1109–10. Consequently, the Defendants' motion on this issue is denied.

#### 2. *Miscellaneous Material Facts*

**\*3** Defendants assert that the Court inappropriately relied on several disputed facts in ruling on summary judgment, some of which are material and others not. A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Disputes over those material facts "will properly preclude the entry of summary judgment." *Id.*

The Defendants assert that three sets of facts are immaterial: (i) Defendants' knowledge of Plaintiff's grievances; (ii) Varano's failure to contact Defendant Kodack; and, (iii) the amount of time Chappelle was held past his maximum date. The Court addresses these issues in turn.

##### i. *Defendants' Knowledge of Plaintiff's Grievances*

The Defendants' knowledge of the Plaintiff's grievances is a material fact because it "might affect the outcome of the suit under the governing law [,]" and it is in dispute such that it "preclude[s] the entry of summary judgment." *Id.* Defendants assert that awareness or notice of Plaintiff's complaint does

not equate to receiving credible evidence that Plaintiff was being over-detained, or having knowledge of a constitutional violation. In doing so, the Defendants attempt to relitigate issues before this Court on summary judgment, which is inappropriate at this juncture. *See* Jasin, 292 F.Supp.2d at 676. The Defendants' motion on this issue is denied.

### ii. Defendants' Response to Notice

The Defendants assert that the facts the Court found material concerning Defendants Varano, Kodack, and Herbst's responses to notice of Plaintiff's grievances are, in fact, immaterial because the Pennsylvania Board of Probation and Parole ("PBPP") had the ultimate authority to release the Plaintiff. This issue was addressed on summary judgment and the facts remain material.

The deliberate indifference analysis in this context focuses on whether a defendant had a duty to investigate and unravel the sentencing problems, not whether the defendant had the primary authority to resolve the issue. *See, e.g.,* Sample, 885 F.2d at 1112. The Defendants' motion on this point is denied.

### iii. Duration of Plaintiff's Over-detention

The Defendants contend that the Court found that the amount of time Plaintiff was over-detained was a material fact in dispute precluding summary judgment. The Court did not so find. Although the duration of the Plaintiff's over-detention may be material to damages, it is not material to the merits of the governing law on summary judgment.

The fact that the Parties dispute the actual duration of the Plaintiff's over-detention did not preclude summary judgment. The Court noted the dispute briefly in two footnotes to ensure that its narrative of the facts accurately reflected the record. *See* Mem ., at 4 n. 2, 30 n. 3. These disputed facts were immaterial at this juncture and were not dispositive.

### iv. Causation

The Defendant asserts that the Plainitff did not produce evidence to support the third prong of the *Sample* test: that the Defendants proximately caused Plaintiff's over-detention. The Defendants raise no new issues on this point, and attempt to relitigate the issue decided in summary judgment.

**\*4** The Third Circuit law is clear: when a defendant with notice of the issue has access to relevant records and the ability to understand them, he is "in the best position to either solve the problem or know who could." Sample, 885 F.2d at 1112. A defendant's failure to take meaningful steps to resolve this issue may constitute deliberate indifference even though he or she does not have the primary authority to resolve the issue. *Id.* Plaintiff presented facts to this respect that the Defendant disputes—consequently, the issue survives summary judgment.

### 3. *Qualified Immunity*

The Defendants also inappropriately reassert their arguments that they are entitled to qualified immunity. In analyzing an assertion of qualified immunity, the Court must apply an objective standard that considers whether a reasonable person acting as the Defendants did would have known their conduct violated clearly established law. Schneyder v. Smith, 653 F.3d 313, 318 (3d Cir.2011). The Court previously articulated that it was clearly established that holding a man past his sentence is a violation of the Eighth Amendment to the United States Constitution, and that a prison official who had the ability to address a prisoner's legitimate complaint had a duty to do so. Mem., at 26 (citing Sample, 885 F.2d at 1108). Because the Defendants had access to inmate records and the training to decipher them and were in the best position to either resolve the problem themselves or know who could, the defendants are not entitled to qualified immunity. *See id.*

### 4. *Favorable Termination Rule Does Not Apply*

The Defendants contend that Chappelle's claims are barred by the favorable termination rule, articulated by Justice Scalia in Heck v. Humphrey, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), which provides:

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared

invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

As the Court previously articulated, this rule only applies when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. In contrast, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.*

The Defendants assert that a recent decision by the United States Court of Appeals for the Third Circuit, *Deemer v. Beard,* 13–1986, ––– Fed. App'x ––––, 2014 WL 764862 (3d Cir. Feb.27, 2014), represents an intervening change in the controlling law. That case is inapposite to the case before the Court.

**\*5** In *Deemer,* the Third Circuit affirmed a district court decision granting the defendant's motion to dismiss because the plaintiff failed to establish that his term of incarceration had been overturned, which is a prerequisite under the favorable termination rule. *Deemer v. Beard,* 13–1986, ––– Fed. App'x ––––, 2014 WL 764862, *1 (3d Cir. Feb.27, 2014). The plaintiff was released on parole from a Pennsylvania state sentence that had 489 days remaining at the time of his release. *Id.* When the plaintiff violated a condition of his parole, the PBPP declared him delinquent, issued a warrant, and the plaintiff remained a fugitive for several months until he was arrested in New Jersey and charged with a violation of New Jersey law. *Id.* For the next 366 days, he was detained without bail until the New Jersey charges were dismissed. *Id.*

Following his detention in New Jersey, the plaintiff was returned to Pennsylvania and incarcerated. *Id.* The PBPP conducted a parole violation hearing and determined that 489 days of his previous Pennsylvania sentence had yet to be served, which was the duration for which he was then incarcerated. *Id.* The PBPP rejected the plaintiff's contention that he should receive credit for the 366 days he served in custody in New Jersey. *Id.*

The plaintiff then filed a 42 U.S.C. § 1983 action alleging that the PBPP's failure to credit his period of incarceration in New Jersey toward the remaining period of his Pennsylvania sentence resulted in incarceration beyond the maximum sentence imposed by the court of conviction, in violation of both Pennsylvania law and the Eighth and Fourteenth Amendments of the United States Constitution. *Id.* at \*2. The plaintiff further argued that *Heck* did not apply to his case because he was no longer in custody and never had alternate access to the habeas corpus jurisdiction of federal courts due to the short duration of his commitment, through no fault of his own. *Id.* The Third Circuit reviewed the *Heck* decision and its own subsequent precedent to reaffirm that "any claimant, even if the door to federal habeas is shut and regardless of the reason why, must establish favorable termination of his underlying criminal proceeding before he can challenge his conviction or sentence in a § 1983 action." *Id.* at \*5.

*Deemer* is inapposite to the case before the Court for a number of reasons. Chiefly, the plaintiff in *Deemer* was challenging directly the duration of his confinement under his original sentence and a discretionary determination made by the PBPP without error. In the case *sub judice,* Chappelle does not challenge the "invalidity of his conviction or sentence," or a normative discretionary decision by the PBPP, but, instead, an error in calculation. *See Heck,* at 487. Furthermore, Chappelle had already served the full duration of his sentence —his challenge is for over-confinement beyond the length of his original sentence because of an alleged constitutional violation of deliberate indifference, not a discretionary decision with an apparently sound basis in right. *See Deemer,* at \* 4–5.

**\*6** Nor does Chappelle allege that he lacked access to federal habeas, which was principally at issue in *Deemer. See id.* Quite simply, *Deemer* does not apply to this case. Chappelle's "action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," and, consequently, the favorable termination rule does not apply. *Heck,* at 487.

### III. CONCLUSION

In their Motion for Reconsideration, the Defendants do not present viable grounds for altering the Court's decision on summary judgment. Either the Defendants inappropriately

attempt to relitigate issues previously decided by the Court, or the law the Defendants offer is inapposite to the facts of this case. Accordingly, the Defendants' Motion for Reconsideration is denied.

An appropriate Order follows.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2808608

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 4:19-cv-01438-MWB   Document 113-1   Filed 04/07/22   Page 7 of 17

Hamilton v. Hamilton, Not Reported in Fed. Supp. (2020)

2020 WL 487128
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Harry HAMILTON, et al., Plaintiffs,
v.
Lance HAMILTON, et al., Defendants.

No. 4:19-CV-01517
|
Filed 01/30/2020

**Attorneys and Law Firms**

Harry Hamilton, Lemont, PA, pro se.

Harry E. Hamilton, Wilkes-Barre, PA, pro se.

### ORDER

Matthew W. Brann, United States District Judge

**\*1** Harry Hamilton and Harry E. Hamilton filed this civil rights complaint alleging that several individuals and entities violated their rights.[1] Because it appeared that Plaintiffs failed to serve Defendants with the complaint, on September 5, 2019, Magistrate Judge Martin C. Carlson issued an Order directing Plaintiffs to serve Defendants or show cause as to why the complaint should not be dismissed.[2] Plaintiffs did not respond to this Order or serve Defendants. Accordingly, on December 12, 2019, Magistrate Judge Carlson issued a Report and Recommendation recommending that this Court dismiss the complaint without prejudice for failure to timely serve Defendants or, alternatively, for failure to include a short and plain statement of their claim, in accordance with Fed. R. Civ. P. 8.[3]

| 1 | Doc. 1. |
|---|---|
| 2 | Doc. 6. |
| 3 | Doc. 7. |

Plaintiffs filed a motion for reconsideration of the Report and Recommendation, which the Court construes as a belatedly-filed objection to the Report and Recommendation.[4] Where no timely objection is made to a report and recommendation, this Court will review the recommendation only for clear error.[5] However, "[i]f a party objects timely to a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.' "[6] Regardless of whether timely objections are made, district courts may accept, reject, or modify—in whole or in part—the magistrate judge's findings or recommendations.[7]

| 4 | Doc. 8. |
|---|---|
| 5 | Fed. R. Civ. P. 72(b), advisory committee notes; see Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining that court should in some manner review recommendations regardless of whether objections were filed). |
| 6 | Equal Emp't Opportunity Comm'n v. City of Long Branch, 866 F.3d 93, 99 (3d Cir. 2017) (quoting 28 U.S.C. § 636(b)(1)). |
| 7 | 28 U.S.C. § 636(b)(1); Local Rule 72.31. |

Even after conducting a de novo review of the Report and Recommendation, the Court finds no error in Magistrate Judge Carlson's recommendation that the complaint be dismissed without prejudice. Specifically, the Court concludes that Plaintiffs failed to timely serve Defendants, and no good cause exists to excuse that failure to serve.

Fed. R. Civ. P. 4(m) requires that a plaintiff serve the defendants "within 90 days after the complaint is filed." If a plaintiff fails to timely serve a defendant, courts may "dismiss the action without prejudice against that defendant" or grant an extension of time unless the plaintiff shows good cause for the failure to timely serve a defendant, in which case an extension of time must be granted.[8]

| 8 | Fed. R. Civ. P. 4(m). |
|---|---|

The United States Court of Appeals for the Third Circuit " 'ha[s] equated good cause with the concept of excusable neglect, which requires a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules.' "[9]

Case 4:19-cv-01438-MWB   Document 113-1   Filed 04/07/22   Page 8 of 17

Hamilton v. Hamilton, Not Reported in Fed. Supp. (2020)

*2 The factors a court should consider in evaluating whether good cause exists are: (1) the reasonableness of the plaintiff's efforts to effect service; (2) prejudice to the defendant because of untimely service; (3) whether the plaintiff has moved for an enlargement of time; and (4) whether the statute of limitations will bar the plaintiff's claims if the action is dismissed. [10]

9   *Mathies v. Silver*, 450 F. App'x 219, 222 (3d Cir. 2011) (quoting *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995) (ellipsis omitted)).

10   *Id.*

After reviewing the relevant factors, the Court concludes that Plaintiffs have not shown good cause for their failure to serve Defendants. As to the first factor, Plaintiffs' efforts to effect service have been deficient. Indeed, Plaintiffs appear to have taken no efforts at all to serve Defendants, even after they were explicitly warned that failure to serve Defendants may result in the dismissal of their complaint. [11] Harry Hamilton asserts that the failure to serve Defendants should be excused because he frequently forgets about his mail and believed that he would need to pay a United States Marshal to serve Defendants. [12] This is, in the Court's view, not a reasonable explanation for that failure.

11   *See* Doc. 6.

12   Doc. 8 at 3-4.

With regard to the second factor, prior to the issuance of Magistrate Judge Carlson's Report and Recommendation, Plaintiffs never moved for an extension of time to serve Defendants, even after they were warned that failure to timely serve Defendants could result in dismissal of their complaint. As to the third factor, Defendants have likely suffered some prejudice from Plaintiffs' failure to timely serve the summons and complaint. The event that forms the basis of Plaintiffs' complaint occurred in March 2018, [13] and the lapse in time between that event and this date has likely resulted in "the inevitable dimming of witnesses' memories." [14] This, in turn, hinders Defendants' ability to defend against the allegations.

13   Doc. 1 at 5.

14   *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 80 (3d Cir. 2012).

Finally, any action against Defendants is likely not barred by the statute of limitations, as "[t]he statute of limitations applicable to [civil rights] claims in Pennsylvania is two years," [15] and the event of which Plaintiffs complain occurred approximately 22 months ago. Thus, all four factors militate in favor of finding no good cause for Plaintiffs' failure to serve Defendants, and the Court finds it appropriate to dismiss the complaint without prejudice.

15   *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

The Court further notes that the complaint—in its current form—does not adequately apprise Defendants of the claims against them and would therefore be subject to dismissal pursuant to Federal Rule of Civil Procedure 8. Moreover, the complaint is sufficiently addled to cause the Court to question whether Plaintiffs have any viable claims. Should Plaintiffs file a new complaint, they are strongly urged to revise said complaint and present any facts and claims in a clear and coherent narrative. Accordingly, **IT IS HEREBY ORDERED** that:

1. Magistrate Judge Martin C. Carlson's Report and Recommendation (Doc. 7) is **ADOPTED**;

2. Plaintiffs' motion for reconsideration (Doc. 8) is **DENIED**;

3. Plaintiffs' complaint (Doc. 1) is **DISMISSED** without prejudice;

*3 4. Plaintiffs' motion for a permanent injunction is **DENIED** as moot; and

5. The Clerk of Court is directed to **CLOSE** this case.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 487128

Hamilton v. Hamilton, Not Reported in Fed. Supp. (2020)

Case 4:19-cv-01438-MWB   Document 113-1   Filed 04/07/22   Page 9 of 17

**End of Document**　　　　　　　　　　　　　　　　　　© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 4:19-cv-01438-MWB   Document 113-1   Filed 04/07/22   Page 10 of 17

Shutt v. Parks-Miller, Not Reported in Fed. Supp. (2017)

2017 WL 1738450
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Michelle SHUTT, Plaintiff,
v.
Stacy PARKS-MILLER, individually and in her official capacity, and Centre County, Defendants.

4:16-CV-1575
|
Filed 05/04/2017

**Attorneys and Law Firms**

Kathleen V. Yurchak, Goodall & Yurchak, P.C., State College, PA, for Plaintiff.

Bruce L. Castor, Jr., Lance Rogers, Rogers Castor, Ardmore, PA, Mary Lou Maierhofer, Margolis Edelstein, Hollidaysburg, PA, for Defendants.

## MEMORANDUM OPINION

Matthew W. Brann, United States District Judge

### I. BACKGROUND

 *1  On July 29, 2016, Plaintiff, Michelle Shutt, filed a six-count complaint against her former employers, Centre County, and its District Attorney, Stacy Parks-Miller. Each Defendant has filed a motion to dismiss the complaint. Both motions will be granted as to the claims brought pursuant to 42 U.S.C. § 1983, namely Counts I and II. I decline to exercise supplemental jurisdiction over Counts III-IV. The complaint will therefore be dismissed without prejudice so that the Plaintiff may re-file her state law causes of action in the appropriate Court of Common Pleas, should she choose to do so.

### II. DISCUSSION

#### A. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[1] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[2] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[3]

[1] *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (quoting *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

[2] *Neitzke*, 490 U.S. at 326 (citing *Hishon v. King & Spalding*, 467 U. S. 69, 73 (1984)).

[3] *Neitzke*, 490 U.S. at 327.

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[4] In two landmark decisions, *Bell Atlantic Corporation v. Twombly* and *Ashcroft v. Iqbal*, the Roberts Court "changed ... the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking was appropriate under the Federal Rules."[5] More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in Conley v. Gibson and replaced it with a more exacting "plausibility" standard.[6]

[4] Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313 (2012).

[5] 550 U.S. 544 (2007); 556 U.S. 662, 678 (2009), *Wasserman, supra* at 319-20.

[6] *Iqbal*, 556 U.S. at 670 (citing *Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that Twombly retired the Conley no-set-of-facts test").

Accordingly, after Twombly and Iqbal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "[7] "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [8] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." [9] Moreover, "[a]sking for plausible grounds ... calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]." [10]

[7] *Iqbal,* 556 U.S. at 678 (*quoting* *Twombly*, 550 U.S. at 570).

[8] *Iqbal,* 556 U.S. at 678.

[9] *Connelly v. Lane Const. Corp.*, No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016) (Jordan, J.) (internal quotations and citations omitted).

[10] *Twombly*, 550 U.S. at 556.

**\*2** The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." [11] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " [12]

[11] *Iqbal*, 556 U.S. at 679.

[12] *Iqbal,* 556 U.S. at 678 (*quoting* *Twombly*, 550 U.S. at 557 (internal quotations omitted)).

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]." [13] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." [14] "After Iqbal, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss." [15] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." [16]

[13] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[14] *Iqbal,* 556 U.S. at 678 (internal citations omitted).

[15] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[16] *Iqbal,* 556 U.S. at 678.

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. [17]

[17] *Connelly*, 2016 WL 106159, at *4 (internal quotations and citations omitted).

I turn now to the Plaintiff's factual allegations, which I must accept as true on a Rule 12(b)(6) motion.

B. Facts alleged in the complaint

Defendant Stacy Parks-Miller, hereinafter "Parks-Miller," has been District Attorney of Defendant Centre County since January 1, 2010. Plaintiff Michelle Shutt, hereinafter "Shutt," began employment as Parks-Miller's paralegal on June 5, 2012 and resigned for her position on January 6, 2014.

Shutt v. Parks-Miller, Not Reported in Fed. Supp. (2017)

Case 4:19-cv-01438-MWB   Document 113-1   Filed 04/07/22   Page 12 of 17

In October 2014, Shutt began working as a paralegal for the Masorti Law Group. On December 29, 2014, she told her new employer, attorney Philip Masorti, that while employed by Parks-Miller she witnessed Parks-Miller forge a common pleas judge's signature on a bail order. Shutt then prepared an affidavit to that effect that was provided to the Bellefonte Borough Police Department, the FBI, and the Pennsylvania Supreme Court's Disciplinary Board. Attached to the affidavit were emails sent by Parks-Miller to Shutt that Shutt had forwarded from her county email account to her private email account prior to her resignation from the District Attorney's Office.

According to the complaint, when Parks-Miller learned of the affidavit, she began to investigate Shutt for "theft of emails." On January 20, 2015, the affidavit became public knowledge at a Centre County Commissioner's meeting when various attorneys brought it to the Commissioners attention for investigation. On January 24, 2015, the Bellefonte Borough Police Department executed a search warrant on Parks-Miller's office.

 **\*3**  The investigation was later taken over by the Pennsylvania Attorney General's Office and submitted to a grand jury for investigation. Shutt was subpoenaed and testified that she had been directed by Parks-Miller to prepare a fake bail order; that she witnessed Parks-Miller forge the judge's signature; and that she was further directed by Parks-Miller to have the forged order docketed by the Centre County Prothonotary's Office.

On July 31, 2015, the state Attorney General's Office released a report indicating that a grand jury investigation found no criminal activity on the part of Parks-Miller. Consequently, the state Attorney General's Office declined to move forward with any criminal investigation against Parks-Miller.

That same date, Parks-Miller convened a press conference in front of the Centre County Courthouse. The transcription of her statements (at length) is as follows:

> Well—thanks for coming. All right—it's been a long seven months but one of my favorite sayings is a lie can travel halfway around the world while the truth is still putting on its shoes. I am a true believer in justice and the criminal justice system but the truth has finally been revealed. I told everyone at the beginning that I am innocent and a grand jury full of strangers today says I was telling the truth. I do thank the grand jury for their hard work but I also believe in accountability and sometimes that's a dying art. The simple truth in this case is that Michelle Shutt is a liar.

> Ms. Shutt came into my office looking for a job after she was let go from a previous job because she cheated her employer. She was let go for under-ringing merchandise. She lied on that job application and when I caught that lie, she begged me to overlook it. I did, wanting to give people a second chance and that is a decision I deeply regret and while I'm tough and I can overlook things, I'm a real person. I have a family. She owes an apology to my grandmother and mother who wondered for the past seven months how someone who can lie publically and get away with it.

> This report is crystal clear. Ms. Shutt committed at least three crimes, a false report to police, a false report by writing it out and signing the affidavit and clearly committed felony perjury by testifying in front of the grand jury to these bold faced lies. I demand full criminal responsibility for this behavior. A district attorney is every bit as much a victim as anyone else. I demand that Shutt and anyone else who assisted, encouraged and supported her lies over all these months be investigated and prosecuted. This includes the Centre County Commissioners, their solicitor, Lou Glantz, who the report unequivocally said operated outside the bounds of the law, their authority.

> The commissioners balance budgets. They have been on a witch hunt for me. They tried to play police officer, investigator and they been trying to shatter my reputation with lies for months. The grand jury found specifically that I acted in accordance with the law while the commissioners inappropriately engaged the services of special counsel contrary to law. This was after my attorney specifically warned them of this legal point and they ignored it. The impartial grand jury found as a fact that the commissioners disregarded clear statutory requirements in their action and they hired a special counsel spending and squandering tax payers' dollars contrary to law. They have made defamatory statements about me for seven months straight based upon lie after lie. This is men whose job it is to manage fiscal affairs of the government—period. Do you realize the magnitude of what the commissioners have done for the county by this witch hunt in the past seven months? They have been trying with a handful of other people to convince this county and my supporters that the district attorney and law enforcement in Centre County is corrupt with their lies and recently they've besmirched our judges. They are trying to convince the community that you shouldn't trust what's going on down here in Bellefonte, something's amiss.

Case 4:19-cv-01438-MWB   Document 113-1   Filed 04/07/22   Page 13 of 17

Shutt v. Parks-Miller, Not Reported in Fed. Supp. (2017)

**\*4** And why? It all started when I beat Bernard Cantorna in a trial, in a case where a woman almost killed a child. He simply didn't take it well. He had a relationship with her. And he is business partners with Lou Glantz, the county solicitor. They decided to pay me back. They looked for a way to darken my character. I'm too hard on crime apparently. With the lying and conniving Michelle Shutt, who by the way the commissioners did not believe when she first tried to say I had her do campaign work They teamed up with her-Sean McGraw, Bernie Cantorna and Phil Masoriti—to stage this silly lie that has almost unglued our county over the last seven months. They lied at a meeting that started it all. We need to investigate her. We need to involve the Bellefonte police. They knew it had been reported to the Attorney General and they used every commissioner's meeting since then as a bullypulpit to defame me. Some of you bought it and printed it. I hope you now print my innocence with the same ferocity you printed their lies.

The commissioners invaded the district attorney's files and emails and phone records which is patently illegal. They endangered and squandered resources and they actually looked at ongoing investigations. These men who are only here to balance budgets and we had to sue them to stop it. Once I caught them, they said they wouldn't do it again. I had to sue them along with the judges to stop them from looking in files and actually compromising ongoing investigations and threatening police officers' safety.

Guess who the commissioners gave my records to? Sean McGraw and Bernie Cantorna, ignoring requests from other defense attorneys but favoring them. We have shown you these connections but the press has failed to print it. The same exact people who accused me of forgering.

Sean McGraw is Michelle Shutt's lawyer. He called her a whistle blower in the beginning perhaps hoping for a big lawsuit. Her firm said she was brave for telling the truth. Nothing can be further from the truth. She is a felon. They pretend, the commissioners pretend they are champions of open records, that is a smoke screen because we caught them breaking the law.

The lawsuit was only to keep them out of my records and to point people to me when they had an open records request. I handled open records requests during the Sandusky matter. I think I know how to operate within the bounds of the law. They have been selling you a smokescreen and you have been buying it. What did Judge Kurtz say about the commissioners when he learned how they were operating under the right to know law and breaking it? He said they broke the law, violated the constitution and violated my privacy. Sworn elected official in active office have violated the law. Where is that headline? He said their behavior was unconscionable. They gave out my private phone number knowing it was protected under the law. I received threats from people I prosecuted. One man whose brother I prosecuted threatened to pay me back with sexual violence. Where is that headline?

So what's going on down here at Willowbank? Criminal behavior by Michelle Shutt and others. That's what. I've beaten them at every turn. I won every frivolous motion filed by Sean McGraw who has ulterior motives to try to bolster Michelle Shutt. I won my civil lawsuit handily against the commissioners who were deemed law breakers by a judge who said their behavior was unconscionable and now I have been proven innocent of signing the judge's name. Each time the commissioners act more outrageous, they double down and destroy our county's faith and reputation across the state.

But I tell Centre County citizens this—I will not be bullied by Centre County commissioners or people who seek to destroy my reputation with lies. I will remain your independent prosecutor. I will be the prosecutor you can trust. I will not be told who to prosecute and I will not be bullied by any club or clique. I will not be influenced or beholden to anyone. I will do what is right based upon the facts and I don't engage in cronyism or let politics enter the DA's office. It's not going to happen. I made promises to this community and they will not beat me down with lies. I respect the law and the constitution and I demand that everyone that was involved in this corruption be prosecuted in this matter and I will fight against corruption as your DA.

**\*5** This stops here and now and I will not stop until the right people are held accountable and I do urge the public to make smart decisions this Fall and vote those bums out or we will never return to normal down at this courthouse. A system cannot survive with unscrupulous people attacking other arms of government for petty and personal motives. They are tearing us apart down here and frittering away untold amounts of money for no good reasons other than personal agendas. People have a voice and come fall and you must use it. And I thank the grand jury for what they have done.

Case 4:19-cv-01438-MWB   Document 113-1   Filed 04/07/22   Page 14 of 17

**Shutt v. Parks-Miller, Not Reported in Fed. Supp. (2017)**

Several news sources picked up and re-published Parks-Miller's statements in various news articles. Several were, naturally, online sources, namely youtube.com, statecollege.com and philly.com. The other was the Centre Daily Times, a print newspaper, and principal newspaper of record in Centre County.

Parks-Miller filed a civil suit against Shutt and others, which was removed to this Court on September 9, 2015. I dismissed that action in its entirety. As to Shutt, the Parks-Miller action was dismissed as all the claims agianst her were based on her grand jury testimony, which I held to be immune from suit.

Shutt now alleges that due to Parks-Miller's actions, and statements, Shutt's "opportunities for employment in the legal field have been eliminated, as have her prospects for comparable employment." Her complaint against Parks-Miller sets forth her defamation theory.

### C. Count I: 42 U.S.C. § 1983 Retaliation for Exercise of Activity Protected by the First/Fourteenth Amendment Rights (Against All Defendants)

In order for a plaintiff to prevail under 42 U.S.C. § 1983, he must establish two elements: first, that the conduct complained of was committed by a person acting under color of state law; and second, that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. [18]

[18]   See Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).

"In general, constitutional retaliation claims are analyzed under a three-part test."[19] " Plaintiff must prove (1) that [it] engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation."[20]

[19]   Mun. Revenue Servs., Inc. v. McBlain, 347 Fed. Appx. 817, 823 (3d Cir. Pa. 2009) (internal citations omitted).

[20]   Id.

In this matter, Shutt is alleging a First Amendment retaliation claim as incorporated by the Fourteenth Amendment. The *First Amendment* to the United States Constitution protects citizens right to speech. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right."[21] "Because government retaliation tends to chill an individual's exercise of his First Amendment rights, public officials may not, as a general rule, respond to an individual's protected activity with conduct or speech even though that conduct or speech would otherwise be a lawful exercise of public authority."[22]

[21]   Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000), See ACLU v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."); see also Pickering v. Board of Educ., 391 U.S. 563, 574, 20 L.Ed. 2d 811, 88 S. Ct. 1731 (1968) (noting that retaliatory acts are "a potent means of inhibiting speech").

[22]   Balt. Sun Co. v. Ehrlich, 437 F.3d 410, 415-416 (4th Cir. 2006), citing Bd. of County Comm'rs v. Umbehr, 518 U.S. 668, 674, 116 S. Ct. 2342, 135 L.Ed. 2d 843 (1996); Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000); see also Perry v. Sindermann, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L.Ed. 2d 570 (1972) ("If the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited").

**\*6** "Thus, by engaging in retaliatory acts, public officials place informal restraints on speech "allowing the government to 'produce a result which [it] could not command directly.' "[23] "Such interference with constitutional rights is impermissible."[24] "[A] public official's malicious intent, taken alone, cannot amount to a retaliatory response."[25]

[23]   Suarez Corp. Indus., 202 F.3d at 685

24  Id. citing Perry v. Sindermann, 408 U.S. 593, 597, 33 L.Ed. 2d 570, 92 S. Ct. 2694 (1972) (alterations in original) (citation omitted).

25  Balt. Sun Co., 437 F.3d at 420.

"A retaliation claim under 42 U.S.C. § 1983 must establish that the government responded to the plaintiff's constitutionally protected activity with conduct or speech that would chill or adversely affect his protected activity."[26] "The determination of whether government conduct or speech has a chilling effect or an adverse impact is an objective one—we determine whether a similarly situated person of 'ordinary firmness' reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case."[27] "Because our analysis of the adverse impact is objective, it can be resolved as a matter of law."[28]

26  Balt. Sun Co., 437 F.3d at 416, citing Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005); ACLU v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993).

27  Balt. Sun Co., 437 F.3d at 416, citing Constantine, 411 F.3d at 500; Wicomico County, 999 F.2d at 786; see also Thaddeus-X v. Blatter, 175 F.3d 378, 398 (6th Cir. 1999) (tailoring adverse impact analysis to specific circumstances presented).

28  Balt. Sun Co., 437 F.3d at 416.

In the case at bar, I conclude that there is no retaliation as a matter of law as the Defendants did not engage in conduct that would chill a person of ordinary firmness. In "retaliation cases involving 'speech against speech' there should be a 'threshold of measurable harm required to move government response to public complaint from the forum of free speech into federal court.' "[29] A "state-law theory of per se defamation does not sufficiently demonstrate harm and therefore does not establish a federal retaliation claim."[30] The "alleged retaliation did not come in the form of denial of a permit or threat of a lost contract."[31] "Rather, it was a group of statements none very kind about" Shutt.[32]

29  Zaloga v. Borough of Moosic, 841 F.3d 170, 177 (3d Cir. 2016) citing Zherka v. Amicone, 634 F.3d 642, 646 (2d Cir. 2011).

30  Zherka v. Amicone, 634 F.3d 642, 643 (2d Cir. 2011).

31  Id. at 646.

32  Id.

"Retaliatory insults or accusations may wound one's soul, but by themselves they fail to cross the threshold of measurable harm required to move government response to public complaint from the forum of free speech into federal court."[33] Moreover, other circuits have held that allegedly defamatory statements alone are insufficient to deter a person of ordinary firmness from future speech.[34]

33  Id.

34  See, e.g., Zutz v. Nelson, 601 F.3d 842, 849 (8th Cir. 2010); Mezibov v. Allen, 411 F.3d 712, 722 (6th Cir. 2005).

**\*7** Although I have determined that Shutt does not have a Constitutional claim based on the statements made by Parks-Miller at the July 31, 2015 press conference, she may nevertheless have a state tort cause of action, to which the undersigned expresses no opinion.

D. Count II: Violation of 42 U.S.C. § 1983 False Public Statements (Against All Defendants)

The allegations set forth in Count II have confused both the parties and the Court, as there is no "false public statements" cause of action under federal law. The Court initially surmised that Shutt was attempting to federalize defamation, but this does not appear to be the case. In her brief opposing each Defendants' motion to dismiss, she explained that she is not, in fact, bringing a defamation claim under Section 1983. Shutt further clarified in her brief opposing Parks-Miller's motion that Count II is a "fourteenth amendment violation" of "her ability to pursue her chosen career and profession" and that "as she included damages to her occupation, Shutt

Case 4:19-cv-01438-MWB   Document 113-1   Filed 04/07/22   Page 16 of 17

Shutt v. Parks-Miller, Not Reported in Fed. Supp. (2017)

has adequately pled a violation of their [sic] Fourteenth Amendment due process rights." [35] I respectfully disagree.

[35]   ECF No. 22 at 38.

Shutt has not, nor can she, adequately plead a due process claim. The Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States." [36] "Reputation alone is not an interest protected by the Due Process Clause." [37] Moreover, defamatory statements that curtail a plaintiff's business opportunities do not suffice to support a substantive due process claim. [38]

[36]   *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (holding that defamation by itself does not harm a liberty interest protected under the Fourteenth Amendment).

[37]   *Dee v. Borough of Dunmore*, 549 F.3d 225 (3d Cir. 2008) (internal citations omitted).

[38]   See *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399-404 (3d Cir. 2000)

In order "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest ... guaranteed by state law or the Constitution." [39] "In the public employment context, the "stigma-plus" test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest." [40] "To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statements (1) were made publicly, and (2) were false." [41] Here, Shutt has alleged that Parks-Miller made false stigmatizing statements at the July 31, 2015 press conference.

[39]   *Id.*

[40]   *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) citing *Codd v. Velger*, 429 U.S. 625, 628 (1977).

[41]   *Hill,* 455 F.3d at 225 (internal citations omitted).

The "plus" of the "stigma-plus" test can be termination or constructive discharge, without respect to whether the employee has a property interest in the lost job. [42] The Honorable Joy Flowers Conti, writing for the United States District Court for the Western District of Pennsylvania, has succinctly explained when something other than the loss of government employment constitutes the necessary "plus" to maintain an action under the Fourteenth Amendment, as follows:

> **\*8**  The plus prong is typically termination of employment, but reputational damage that occurs "in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution" is actionable.*D & D Assoc., Inc. v. Bd. of Educ. of N. Plainfield*, 552 Fed.Appx. 110, 113 (3d Cir. 2014) (citing *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989)); *Lockett*, 529 Fed.Appx. at 296; *Brown*, 470 Fed.Appx. at 91. Although deprivation of the "liberty to pursue a calling or occupation" or to "earn a living" have been deemed sufficient to satisfy the plus prong, a generalized "possible loss of future employment opportunities," and "financial harm" are insufficient to support a reputation-based due process claim. *Simpson v. Nicklas*, 500 Fed.Appx. 185, 188 (3d Cir. 2012) (citing *Clark*, 890 F.2d at 620, and *Sturm v. Clark*, 835 F.2d 1009, 1013 (3d Cir. 1987)); *Thomas*, 463 F.3d at 297; *Hill*, 455 F.3d at 232-33; *see Arneault v. O'Toole*, 513 Fed.Appx. 195, 198-99 (3d Cir. 2013) (loss of possible business prospects by being required to disclose an unfavorable fact on future applications does not satisfy the plus prong). [43]

[42]   *Id.* at 238.

[43]   *Kahan v. Slippery Rock Univ. of Pennsylvania*, 50 F. Supp. 3d 667, 711 (W.D. Pa. 2014), *aff'd,* 664 Fed.Appx. 170 (3d Cir. 2016)

The "plus" element of the "stigma-plus" test is what is lacking in the present action. First, Shutt voluntarily left her employment with Parks-Miller and Centre County well before the July 2015 press conference. Second, she has not alleged deprivation of another Constitutionally guaranteed

Case 4:19-cv-01438-MWB   Document 113-1   Filed 04/07/22   Page 17 of 17

Shutt v. Parks-Miller, Not Reported in Fed. Supp. (2017)

right. Her generalized allegations regarding her inability to pursue her paralegal career are insufficient.

This absent element in the "stigma-plus" test signals to this Court that this is merely a garden variety state law defamation claim as opposed to a more nuanced Fourteenth Amendment violation. Accordingly, Shutt's substantive due process claim for any reputational injury that decreased her ability to earn a living compels dismissal.

### III. CONCLUSION

Having concluded that there are no federal causes of action, and no basis upon which to permit amendment, as amendment would be futile, [44] I decline to exercise supplemental jurisdiction over the state law claims and will dismiss the action in its entirety. Dismissal will be without prejudice as to the state law claims.

| [44] | "Futility" means that the complaint even if amended, would still fail to state a claim upon which relief could be granted. *See* *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). |

An appropriate Order follows.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 1738450

---

End of Document © 2022 Thomson Reuters. No claim to original U.S. Government Works.